UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOAQUIN HUIZAR GAETA,               )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Case No. 3:19-CV-00133-JD
                                    )
ANDREW M. SAUL, Commissioner of     )
Social Security,                    )
                                    )
        Defendant.                  )

## OPINION AND ORDER

Joaquin Huizar Gaeta[1] filed a complaint seeking review of the final decision of the

Commissioner of Social Security denying his application for social security disability benefits

after an Administrative Law Judge ("ALJ") found that Mr. Huizar retained the capacity to

perform work at the light exertional level and therefore was not disabled. For the reasons set

forth below, the Court remands this case for further proceedings.

## I. FACTUAL BACKGROUND

Mr. Huizar filed an initial claim for disability on September 3, 2015 with an alleged onset

date of June 6, 2015. (R. 88). He claimed to be disabled due to a back injury, failed lumbar

fusion, bilateral sciatica, cervical radiculopathy, chronic bladder difficulties, an enlarged

prostate, diverticulitis, gout, GERD, and depression. (R. 89). Plaintiff has only completed

education through the second grade in Guadalajara, Mexico, and cannot read or write in Spanish

or English. (R. 44, 76–77, 238). From 1996 until his claimed disability in 2013, Mr. Huizar

worked in factories as both a machine operator and laborer. (R. 238). An MRI of Mr. Huizar's

lumbar spine dated August 10, 2012 revealed "disc generation . . . at multiple levels throughout

---

[1] Because the claimant is referred to as "Mr. Huizar" throughout the record, the Court refers to him as such in this
opinion.

the lumbar spine" and "foraminal stenosis at L5-S1 due to bilateral spondylolysis with spondylolisthesis." (R. 378). Mr. Huizar's treating physician, Dr. Vidya Kora,[2] also conducted a CT scan on the lumbar spine and reported "bilateral spondylolysis with underlying degenerative disc disease and subtle bulging of the disc," "endplate spurring," and bilateral "neural foraminal stenosis." (R. 380). Doctors discussed surgical intervention, but Mr. Huizar initially declined it. (R. 378, 382). In February of 2013, Dr. Chetan Puranik treated Mr. Huizar with therapeutic injections, prescription medication for pain management, and enrolled him in physical therapy. (R. 379). In June of 2013, Mr. Huizar underwent a spinal fusion surgery. (R. 390).[3]

Mr. Huizar points to continued pain in his lower back and feet which inhibits his ability to sit or stand for extended periods of time as the basis for his inability to work. (R. 53, 58). After reviewing the record and placing emphasis on the opinions of certain medical evaluators and select parts of the vocational expert's testimony, the ALJ found that Mr. Huizar's limitations did not meet a listing requirement at step three, and that he retained the capacity to perform work at the light exertional level. The ALJ accordingly did not find him disabled and denied his claim. After the Appeals Council denied review, Mr. Huizar filed this action.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable

---

[2] Dr. Kora's name is misspelled in the hearing transcript as "Quora." (R. 56, 410).
[3] While the record reflects that Mr. Huizar underwent this surgery, there is no report documenting the actual procedure besides office treatment records from Dr. Ryan Thomas dated September 16, 2014, as cited herein.

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887–88 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1.      Whether the claimant is currently engaged in substantial gainful activity;

2.      Whether the claimant has a medically severe impairment;

3.      Whether the claimant's impairment meets or equals one listed in the regulations;

4.      Whether the claimant can still perform relevant past work; and

5.      Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

# IV. DISCUSSION

Mr. Huizar has offered three arguments in support of remand: 1) the ALJ failed to properly weigh the medical opinion evidence, particularly by giving "little weight" to reports supplied by two of Mr. Huizar's treating physicians; 2) the ALJ failed to properly consider evidence and articulate findings regarding Mr. Huizar's literacy; and 3) the ALJ erred in evaluating his subjective symptom testimony and failed to consider his impairments in combination when assessing Mr. Huizar's RFC. The Court need not address each argument as the Court agrees with Mr. Huizar on the first issue. This error requires remand.

## A. Treating Physicians' Opinions

"A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record."[4] *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). "[M]ore weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). "An ALJ who declines to give controlling weight to the opinion of a treating physician must offer 'good reasons' that are 'sufficiently specific' in explaining what weight, if any, she assigned it." *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Assessing what weight to afford a medical opinion depends on a number of factors, such as the examining relationship; the treatment relationship; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. *See* 20 C.F.R. §

---

[4] The Commissioner has since rescinded the treating physician rule, so it applies only to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Mr. Huizar filed his disability claim in 2015.

404.1527(c). If the ALJ discounts the treating physician's opinion after considering these factors, the Court must give deference to the ALJ's decision so long as he "minimally articulate[d] his reasons." *Elder*, 529 F.3d at 415 (internal quotations omitted).

The ALJ failed to provide sufficient explanation and did not consider all the necessary factors when assigning "little weight" to the opinions of two treating physicians, Dr. Vidya Kora and Dr. Syed Quadri, regarding Mr. Huizar's physical impairments.[5] The basis offered by the ALJ in support of this finding was that the treating physicians' opinions were "simply not supported by the record as a whole." (R. 26–27). The ALJ failed to explain the examining or treatment relationship between Mr. Huizar and his physicians, nor did she note the specialties of the treating physicians, all of which were included in the record. The ALJ did not recognize how long the treating physicians have been treating Mr. Huizar—Dr. Kora began treating him in June 2012, and Dr. Quadri began treating him in April 2016. (R. 625, 628). The only factor the ALJ mentions as support for the low weight given to the treating physicians' opinions is the consistency of the source's opinion with other evidence, however, the conclusion made based on this factor was not sufficiently explained in light of the other evidence.

In addition to the specificity requirement, the Seventh Circuit demands the ALJ create a "logical bridge" between the evidence in the record and the ALJ's conclusion. *Terry*, 580 F.3d at 475. The only evidence specific to these treating physicians that the ALJ identified in his decision was that the doctors "frequently noted [Mr. Huizar] had a normal gait and stance" and

---

[5] On the Medical Assessment-Questionnaire Form, Dr. Kora opined that he expected Mr. Huizar's impairments would prevent him from standing and/or sitting for 6-8 hours, would require that he lie down during the day, noted his difficulty with ambulation, and reported that Mr. Huizar had weight-bearing restrictions. He also noted that Mr. Huizar could reach above his shoulders, down to waist level, towards the floor, and handle objects with hands or fingers only 0-33% of the time. He reported Mr. Huizar had difficulty with bending, squatting, kneeling, and turning his body. Dr. Kora further noted that Mr. Huizar can only lift less than five pounds in an 8-hour period, and that his impairment prevents him from lifting, pulling, or holding objects. Dr. Quadri had an identical opinion on these issues. (R. 624–25, 627–28).

"normal motor function," which the ALJ found to be inconsistent with the treating physicians' overall opinions, and that "the record indicates the claimant has not reached maximum medical improvement and has been told to return to work." (R. 27). To support her conclusion that the treating physicians' opinions were not consistent with the other evidence in the record, the ALJ selectively cited reports that referred to Mr. Huizar's gait as "normal," ignoring substantial evidence in the record that reported otherwise.

While the Court recognizes that the ALJ need not discuss every piece of evidence in the record when rendering her decision, the ALJ must not "cherry-pick" evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). That is precisely what the ALJ did here. For example, in 2014, Dr. Ryan Thomas evaluated Plaintiff's degenerative disc disease and noted his gait as "abnormal" and reported that Mr. Huizar "cannot bear weight on the injured extremity." (R. 388). In 2015, Dr. Smejkal noted that Mr. Huizar had an "antalgic gait using a cane," that "he [was] unable to walk heel to toe and tandemly," and that his cane was "medically necessary due to back pain and generalized weakness to lower extremities." (R. 555). Similarly, in 2016, Dr. Quadri noted that Mr. Huizar "[a]mbulates to the exam room without assistance, but using [sic] cane," specifying that even using the cane, his gait "appears labored." (R. 612). A physical therapy evaluation in January 2017 noted "severe guarding due to pain" and recommended aqua therapy "due to weakness and high level of pain [with] limited functional level." (R. 672–73). The ALJ did not otherwise address Dr. Kora and Dr. Quadri's other findings regarding his functional limitations as noted in their treating source statements. (R. 624–25, 627–28). These examples show that the ALJ cherry-picked which reports to use in support of her opinion, without articulating good reason for rejecting the reports inconsistent with that conclusion.

The ALJ's statement that the "record indicates the claimant has not reached maximum medical improvement and has been told to return to work" also does not close the gap in the required logical bridge. (R. 27). Not only does the ALJ not cite to any document in the record in making this broad-brush statement, but it is a mischaracterization of medical opinion evidence. In Dr. Gregory McComis' treatment notes from March 2016, he noted that Mr. Huizar "can return to his work with a *sedentary* job." (R. 365) (emphasis added). The ALJ's opinion made no reference to the sedentary qualifier when using Dr. McComis' opinion to minimize the weight of Drs. Kora and Quadri's opinions. Further, Dr. McComis' opinion did not specify whether Mr. Huizar was capable of working an 8-hour day and, therefore, is not necessarily inconsistent with the opinions of Drs. Kora and Quadri, which indicate that Mr. Huizar is not able to stand, walk, and/or sit for 6-8 hours and would need to lie down during the day. (R. 624–28). Despite relying on this evidence from Dr. McComis, the ALJ came to an entirely different conclusion about Mr. Huizar's functional capacity relative to his medical opinion. Thus, the basis set forth in the ALJ's opinion to assign little weight to Mr. Huizar's treating physicians' opinions is insufficient.

The ALJ's assignment of "some weight" to Dr. McComis' opinion that the claimant can return to work with a sedentary job was also not adequately supported in the ALJ's decision. While Dr. McComis was one of the few doctors who actually "had the benefit of personally examining the claimant prior to rendering his opinion," the ALJ deemed Mr. Huizar capable of light work—a categorization in direct contradiction to Dr. McComis' report. In doing so, the ALJ provided two rationales. First, that Dr. McComis' treatment of Mr. Huizar was "somewhat limited,"[6] and second, that "subsequent evidence after this opinion was given suggests the claimant is capable of light work." (R. 26). This Court finds the ALJ's first basis to be entirely

_____

[6] Dr. McComis was an examining doctor who treated Mr. Huizar multiple times in connection with his worker's compensation. (R. 363–68).

inconsistent with the ALJ's opinion itself, given that the ALJ assigned the most weight to the opinions of doctors who never personally examined Mr. Huizar. (R. 26). The ALJ assigned "great weight" to the opinion of non-examining medical expert Dr. Fuchs to the "extent [it is] consistent with the findings [in the ALJ decision]." (R 26). However, contrary to the Commissioner's argument, Dr. Fuchs' opinion is not entirely conflicting with Dr. McComis' opinion. Dr. Fuchs opined that Mr. Huizar could stand and walk up to 2 hours each workday and that he would "perhaps at times" need a cane to ambulate (R. 782), which is more restrictive than light work. *See* SSR 83-10 ("The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Further, the ALJ's reliance on "subsequent evidence after [Dr. McComis'] opinion was given" without denoting any specific report, opinion, or other line of evidence to support her conclusion renders it inadequate. In coming to her conclusion, the ALJ's limited engagement with Dr. McComis' report does not create the logical bridge necessary for the Court to provide the Plaintiff a meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). While the ALJ did not need to give Dr. McComis' opinion controlling weight, she did need to accurately articulate her reasons for assigning it the weight she did. The Court finds that the ALJ failed to do so.

The ALJ determined that Mr. Huizar can perform light work which requires lifting objects of 20 pounds or less with "frequent lifting or carrying of objects weighing up to 10 pounds," and "a good deal of walking or standing." *See* 20 CFR § 404.1567(b). The regulatory requirements at this exertion level also state that "[t]o be considered capable of performing a full or wide range of light work, you must have the ability to do *substantially all of these activities*." *Id.* (emphasis added). Despite the ALJ's cherry-picking approach to the medical evidence, several reports—including those prepared by Dr. Quadri, Dr. Kora, and non-examining Dr.

Fuchs—suggest that Mr. Huizar's physical limitations inhibit his ability to "do a good deal of walking or standing" and "safely lift and/or carry" more than five pounds, (*See* R. 627–28, 677–78, 782). Dr. McComis' report suggested Mr. Huizar is only capable of performing work at a sedentary level. (R. 365). Should the ALJ still choose to disregard those reports when formulating the RFC, she must provide a logical bridge between that decision and the evidence in order to meet her burden.

Because the ALJ failed to properly weigh the medical opinion evidence of Mr. Huizar's treating physicians, and because the ALJ did not adequately explain her conclusion why the RFC is more restrictive then Dr. McComis' finding and other medical opinions, harmful error occurred, and remand is required. The Court recognizes that the RFC is a legal determination made by the ALJ, not a medical determination. However, the ALJ must justify her decision based on the record evidence by evaluating both the evidence favoring the claimant as well as the evidence favoring the claimant's denial and may not ignore an entire line of evidence contrary to her findings. *Zurawski*, 245 F.3d at 887–88. Thus, the ALJ's decision cannot stand since it lacks substantial evidentiary support and an adequate discussion of the issues. *See Lopez*, 336 F.3d at 539.

### B. Literacy

In her decision, the ALJ made a finding that Mr. Huizar "has a marginal education and is able to communicate in English." (R. 28). It is not clear to the Court whether this is an express finding on Mr. Huizar's literacy. The ALJ may have accepted the testimony and evidence that Mr. Huizar was illiterate however, also found that he could communicate in English. On the other hand, the ALJ may have meant to find Mr. Huizar as literate due to her finding of marginal education and his ability to communicate in English. If the ALJ's statement was intended to be a

finding of literacy, that finding is not supported by substantial evidence and she failed to create an accurate logical bridge from the evidence to her conclusion. The Court acknowledges that a finding of literacy is not relevant where, as here, there is a determination that the claimant can perform work at the light exertional level. However, if on remand the ALJ determines the claimant can only perform sedentary work, a literacy finding is critical, and the shortcomings noted below should be addressed by the ALJ relative to any literacy finding.

Federal regulations define illiteracy as the "inability to read or write." 20 C.F.R. § 404.1564(b)(1). The regulations consider "someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* Mr. Huizar's contention that he cannot read or write is unchallenged in the record. Not only can he not read or write in English, but also in Spanish, his native language. (R. 76–77). The fact that he can sign his name on worker's compensation documents, a key fact relied upon by the ALJ in her opinion, is irrelevant to a finding of literacy. (R. 358). Furthermore, the record is replete with examples of Mr. Huizar's inability to "read or write a simple message." 20 C.F.R. § 404.1564(b)(1). He used the assistance of his wife and neighbor to fill out the required paperwork throughout these proceedings. (R. 269, 298). As Mr. Huizar notes in his brief, there is no evidence surrounding the review and signing of the worker's compensation documents and the settlement statement that Mr. Huizar signed indicates a fee for a translator. (R. 352).

The ALJ further states that Mr. Huizar can speak English. (R. 28). Again, this is not relevant to the inquiry of illiteracy as it is defined by the Social Security regulations as someone who cannot *read* or *write*. Not only did Mr. Huizar need a translator during the ALJ's hearing, but the ALJ's finding is not substantially supported by several reports in the record that his family members attended his medical appointments to help translate. (R. 366). Additionally, the

ALJ even said that Mr. Huizar is illiterate during examination of the vocational expert and does not address that inconsistency in her opinion. (R. 76–77).

Lastly, the ALJ also supports her conclusion with a decision of a previous ALJ's social security opinion from 2015, denying Mr. Huizar's application. (R. 28). The ALJ notes that the previous ALJ opined that Mr. Huizar had "a marginal education with the ability to communicate in English." *Id.* The Court finds this insufficient to support her finding for three reasons. First, "marginal education" is the category just above illiteracy and the regulations define it as having "ability in reasoning, arithmetic, and language skills." 20 C.F.R. § 404.1564(b)(2). The regulations go on to say that "formal schooling at a 6th grade level or less" can "generally" be considered as marginal education. *Id.* Mr. Huizar only attended school through the second grade in Mexico. (R. 44, 238). In addition to not being able to read or write, Mr. Huizar has very poor math skills. (R. 256, 548). However, the ALJ does not support this finding with any record evidence or explanation.

Second, the ability to communicate in English is a factor that may be used to evaluate a claimant's educational level. 20 C.F.R. § 404.1564(b)(5). While the ALJ cites a physical therapist's notes that state Mr. Huizar can speak English, the ALJ fails to also include that the notes also state "[the patient] looks to his daughter when the therapist asks him a question." (R. 713). This is a critical omittance of evidence since the regulations indicate that "communicat[ing] in English" is the ability to "speak, read and *understand* English." 20 C.F.R. § 404.1564(b)(5) (emphasis added). The record indicates that Mr. Huizar can neither read nor understand English and the ALJ failed to create a logical bridge from her conclusion that Mr. Huizar can communicate in English to this evidence.

Third, the previous ALJ's decision used to support her conclusion is not in the administrative record before the Court. The ALJ provided no evidence or reasoning from the record to support a finding of marginal education or the ability to communicate in English. Therefore, this Court is unable to "critical[ly] review the evidence" and provide Mr. Huizar a "meaningful review" of this ALJ's reasoning. *Lopez*, 336 F.3d at 539; *Giles*, 483 F.3d at 487.

The Commissioner does not dispute the evidence demonstrating that Mr. Huizar meets the regulatory definition of illiteracy, but claims any error is harmless because Mr. Huizar is still able to perform light work. [DE 23 at 10–11]. However, the error is not harmless. While the finding on its own may not be dispositive of his functional ability, the ALJ failed to address a great deal of evidence in her opinion, as noted above. Furthermore, when a claimant is illiterate, the Seventh Circuit demands an award of benefits if the person is only capable of performing work at a sedentary level. *See Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 389 (7th Cir. 1987) (A person "is entitled to social security disability benefits, notwithstanding his ability to do sedentary work, if he is illiterate. This is in recognition of the fact that very few sedentary jobs are available in the economy for people who can't read or write, so that an illiterate person who is disabled from performing all but sedentary work is disabled, period."). This consideration is consistent with the testimony of the vocational expert who opined that there would be no work for an illiterate person who could perform less than light work. (R. 75–77).

Paired with the fact that Drs. McComis, Kora, and Quadri's medical opinions require consideration and explanation on remand and all opinions could support a finding that Mr. Huizar is only capable of sedentary work, literacy would become central to this case. On remand, if a finding of sedentary work is found, the ALJ should make an express finding on literacy supported by the evidence and consistent with the regulations and the Court's discussion above.

Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  March 16, 2020

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court